PATTERSON *v.* DETROIT UNITED RAILWAY.

STREET RAILWAYS—AUTOMOBILES—NEGLIGENCE—PERSONAL INJURIES —CONTRIBUTORY NEGLIGENCE.

Plaintiff collided with one of defendant's street cars as it turned across a street in the city of Detroit, near the city limits. He admitted that he noticed the car standing by one of the switches as he proceeded toward the city and that it was in motion the next time he looked at it between the two tracks and was making a turn at the time; that he was about 16 feet from another switch but was running his motor about 7 or 8 miles an hour and did not know how fast the car was going; that when he saw the car approaching this switch he put on his brakes, the motorcycle skidded and the fender of the car struck the front wheel and caused plaintiff's injury. He gave further testimony tending to show that he saw the car start to swing across the street in front of him, but stated it was going in another direction. *Held*, that the failure of the motorman to sound the gong was immaterial, since plaintiff already knew the direction in which the car was starting;

also that defendant was not shown to have been guilty of any neglect.[1]

Error to Wayne; Collingwood, J., presiding. Submitted June 30, 1915. (Docket No. 116.) Decided July 23, 1915. Rehearing denied December 22, 1915.

Case by Wilbert Patterson against the Detroit United Railway for personal injuries. Judgment for defendant on a verdict directed by the court. Plaintiff brings error. Affirmed.

*Abbott & Abbott* and *Charles Bowles*, for appellant.

*Corliss, Leete & Moody*, and *Benj. S. Pagel*, for appellee.

BROOKE, C. J. Plaintiff, while riding west on Gratiot avenue in the city of Detroit upon a motorcycle, came into collision with a car of the defendant company, which was being turned at the city limits on said street. Plaintiff described the accident as follows:

"When I passed the first switch, I noticed a car standing by the second switch. · I was then between the first and second switches. I proceeded along toward downtown. I saw this car again after that. It was going which I thought was to Mt. Clemens. The next time I observed it, it was in motion and between the two tracks. It was then within 12 or 15 feet of the inside track and was making a turn at that time. It had gone about halfway from the switch to the inside tracks. When I first observed this car and the locality shown by it, I was about 15 or 16 feet from the second switch, the place of the accident.

"Q. About how far would it be from the end of this car to the place of the accident, the car I am speaking of; in feet, about how far would it be in feet—your best estimate of it?

"A. Well, about 15 feet.

[1] As to liability of street railway company to one hit by swing of car on curve, see notes in 16 L. R. A. (N. S.) 890; 40 L. R. A. (N. S.) 133; L. R. A. 1915C, 604.

"*Q.* About 15 feet. We will call 'Y' the place of accident; now where were you with reference to point Y, the place of accident, at the time you saw this car in the location of X?

"*A.* I was about 12 or 15 feet from the second switch.

"*Q.* About here some place, coming in that direction?

"*A.* Yes, sir.

"*Q.* All right. Now, when you first observed this car making the turn there, how fast were you running your motor at the time, do you think?

"*A.* About seven or eight miles an hour.

"*Q.* Did you notice, as to this car, as to its speed at the time you saw it making this turn, or discovered it was about to make this turn?

"*A.* The speed, I couldn't; it came so quick on me, when it went around it kind of seemed to be gaining speed.

"*Q.* Well, you don't know about how fast?

"*A.* No, sir; I don't.

"*Q.* That is, in feet per minute you wouldn't want to give an opinion?

"*A.* The first thing I did when I saw the car in this position was to apply my brakes, and my back wheel skidded about two or three feet. I put the brakes on good and strong. The street car came in contact with my front wheel, which tangled up in the fender and threw me against the car, which caused an injury to my knee. I was two feet from the curb when the car hit me. The car went by until the hind end was at the curb. I came in contact with the car, which dragged my front wheel and threw me against some part of the street car, I think the fender, which punched a hole in my kneecap and split it, and by me going against the car with such force threw me off the motorcycle to the ground, and that was all I knew for a couple of seconds until some D. U. R. employees came and picked me up.   *   *   *

"*Q.* Now state whether or not this motorman gave you any signal of warning as you were coming along there of the fact of his intention to cut across your path.

"*A.* No, sir; he did not."

On cross-examination he testified:

"When I saw the car in motion, I was about 15 feet from the first rail of the switch.

"Q. Well, now, which way did the car start to move?

"A. Why, as far as I know it looked as though it was going to Mt. Clemens.

"Q. And how far did it move along toward Mt. Clemens before it turned?

"A. Well, I couldn't say just how far,

"Q. Well, it wasn't very far, was it?

"A. No, it wasn't very far.

"Q. It was just beyond the point of the switch where it would turn?     •

"A. Yes, sir.

"Q. And as soon as it started it started in on the curve?

"A. Yes, sir.

"Q. And just as soon as it started on the curve, that threw the front end of the car to the north?

"A. To the east side.

"Q. And, of course, you knew it was starting to cross in front of you?

"A. Yes, sir.

"Q. And how far were you away from the car approaching, I mean, the curve, when you saw it turn toward the north?

"A. How far from the north?

"Q. No, how far from the first rail of the car track when you saw this street car turn toward the north on this curve; how far were you away from the first rail of the curve?

"A. When I noticed the street car curve?

"Q. No, when you saw it turn a little bit to the north, which was right after it started?

"A. Oh, about 12 or 15 feet.

"Q. Twelve or 15 feet. Then you were 12 or 15 feet, you were at least 12, and you were probably 15, feet away from the first rail of this curve when you saw the street car turn toward the north?

"A. Yes, sir.

"Q. And the car kept right on coming, didn't it?

"A. Yes, sir.

"Q. Do you know how far it is from the point of

this switch down here on the east-bound track over to the point to where you were struck?

"*A.* About 25 or 30 feet or more.

"*Q.* Twenty-five or 30 feet from here down that way, is that right?

"*A.* Yes, sir.

"*Q.* Then this street car must have run practically twice as far as you did in the same time, is that right?

"*A.* No, sir.

"*Q.* Well, why not?

"*A.* Because I was closer to the track than the street car was to me from the place of accident.

"*Q.* Oh, you were closer to the street car?

"*A.* No, I was closer to the track than the street car was to the place of the accident.

"*Q.* I want to know now the precise moment when the car started to turn toward the north, start onto the curve?

"*A.* When I noticed the car in motion?

"*Q.* Not when you saw it in motion, when it was turning?

"*A.* I didn't see it turn; I saw it in motion.

"*Q.* When you saw it in motion, it was twice as far from the point of contact as you were, or was it closer to it?

"*A.* Well—

"*Q.* Just one thing. Give me the number of feet between that point and the front end of the car, and that point and you when you saw the car turning towards you, that is all I want (indicating on diagram).

"*Mr. Abbott:* I don't know as I understand the question; maybe the witness doesn't. Do you understand it?

"*A.* No, sir; I don't. (Question repeated by reporter.)

"*Mr. Pagel:* The point of contact?

"*Mr. Abbott:* Do you understand the question?

"*A.* I understand it now, yes.

"*Mr. Abbott:* Answer it.

"*A.* I was about 20 feet from it.

"*Q.* The street car then was 20 feet from the point of the accident?

"*A.* When it was making the turn, yes. * * *

"*Q.* Well, you were 15 feet away, and you were only

running seven or eight miles, and you tell us you could almost turn a right angle, at least you could turn a city corner at that place or any place; why didn't you turn to your left that time and not hit the car?

"A. Because I didn't have a chance to.

"Q. Were you running so fast up to this car track that you didn't have a chance to stop?

"A. No, sir; I didn't.

"Q. You didn't have an opportunity when you saw that street car coming in on that track to stop?

"A. Here is the question you asked me. You asked me how fast was it that I was going when I could turn south, you said why didn't I turn?

"Q. Yes.

"A. I told you, no, sir; I couldn't make the turn on account of the street car with the swing around the curve.

"Q. How much does it swing around the curve?

"A. It extends about two feet.

"Q. And not any more than two feet.

"A. Maybe more.

"Q. How much did it extend that day?

"A. Well, I can't say just how much it extended.

"Q. Well, then, you were right up to the spot where you were hit before you fully realized you were hit?

"A. No, sir.

"Q. Well, you didn't turn at all?

"A. No, sir.

"Q. You ran right into this car head on?

"A. I didn't run into it; I put on my brakes.

"Q. But you hit the car head on?

"A. The street car hit me.

"Q. Well, you got there at the same time it did?

"A. Well, with the swing of the car which would beat me quicker.

"Q. Well, what part of the car was it you hit?

"A. The fender hit me.

"Q. Well, you hit the front of the car?

"A. The fender hit me.

"Q. You never got onto this curved track?

"A. No, sir.

"Q. You were still on Gratiot avenue, clear of the curve, when the car hit you?

"A. Yes, when the car hit me.

"*Q.* And it was the right-hand fenders of the car hit your car?
"*A.* Yes, sir."

The learned trial judge directed a verdict for the defendant upon the ground that the plaintiff had failed to prove negligence upon the part of the defendant company, or a lack of contributory negligence upon his own part.

In view of the fact that it is clear from the plaintiff's testimony that he saw the car start to swing across the street in front of him at the moment it started, defendant's failure to sound the gong is of no consequence, because such warning would only have served to place him in possession of notice which he already had.

We are of opinion that a verdict was properly directed for the defendant upon both grounds.

KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice McALVAY took no part in this decision.